**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **BRIAN CATANZARITE,** | **Criminal No. 18-0362 (ES)** <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Brian Catanzarite's ("Defendant") emergency motion for an order converting the remainder of his sentence to probation with home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 23 ("Motion")). The Government opposes the motion. (D.E. No. 26 ("Gov. Opp. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See United States v. Barner*, 656 F. App'x 600, 602 (3d Cir. 2016). For the following reasons, the Court DENIES the Motion.

**I.      Background**

On June 26, 2018, Defendant pled guilty to conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. (D.E. No. 5 ("Guilty Plea")). The fraud involved a scheme in which Defendant caused the submission of false and fraudulent insurance claims for medically unnecessary compounded medications to various health insurance plans, and certain insurance companies would pay an extremely high amount for reimbursement for these compounded medications. (D.E. No. 23-7 at 7; D.E. No. 12 ("Sentencing Tr.") at 21:1–6). The parties stipulated that Defendant was a manager or supervisor, but not an organizer or leader of the criminal activity, which involved five or more participants or was otherwise extensive. (Guilty Plea at Schedule A). The parties also stipulated that the offense involved a total loss of $3,505,885.39. (*Id.*). On March

7, 2019, the Honorable John Michael Vazquez, United States District Judge, adopted these stipulated facts for purposes of Defendant's sentencing hearing. (Sentencing Tr. at 3:8–21). Based on a criminal history category of I and a total offense level of 26, the applicable guideline range was 63 to 78 months. (*Id.* at 5:9–14). However, after considering the relevant factors in 18 U.S.C. § 3553(a), submissions by counsel, the final presentence report, and arguments made at the hearing, Judge Vazquez sentenced Defendant to 50 months of imprisonment, three years of supervised release, and ordered Defendant to pay restitution in the amount of $3,505, 885.39. (*Id.* at 20:21–21; D.E. No. 13 at 2–3 & 6).

On April 23, 2020, Defendant filed a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 19). In that motion, Defendant explained that he had applied internally for the Bureau of Prisons ("BOP") to bring a motion for compassionate release on his behalf, and that he was advised verbally that his request would be denied. (D.E. No. 19-2 at 2–3). On April 24, 2020, this case was reassigned to the Undersigned. (D.E. No. 20). That same day, the Court denied Defendant's motion *without prejudice* because Defendant had failed to either exhaust all administrative rights to appeal a failure of the BOP to bring a motion on his behalf or wait for 30 days to lapse from the receipt of such a request by the warden of Defendant's facility. (D.E. No. 22 at 4–5). After waiting the applicable 30-day period, Defendant renewed his motion on May 8, 2020, arguing that the COVID-19 pandemic and his underlying medical conditions— namely hypertension and obesity—create extraordinary and compelling reasons for his release from imprisonment.[1] (D.E. No. 23). Pursuant to the Court's Order, the Government submitted an opposition to the Motion on May 14, 2020, and Defendant replied on May 18, 2020. (D.E. Nos.

---

[1] Defendant also makes passing references to his high cholesterol but does not specifically argue that this condition places him at a higher risk for severe illness if he were to contract COVID-19. (*See* Mov. Br at 6; Def. Reply Br. at 7). In any event, the existence of this condition does not alter the Court's conclusion.

26 & 28). The Government supplemented its opposition on May 21, 2020, and Defendant responded to the Government's submissions on May 22, 2020. (D.E. Nos. 29 & 30).[2] This Opinion follows.

## II.     Legal Standards

Once a term of imprisonment has been imposed, the Court may only modify it under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that, in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>>
>> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary or compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the Section 3553(a) factors. *United States v. Brummett*, No.

---

[2] Although these submissions were filed without leave of Court, the Court has reviewed them. In these unprecedented times, circumstances are rapidly evolving, and the Court understands the need for reasonable supplemental filings. However, the Court notes that its analysis would be the same with or without the Government's supplemental brief.

3

6:07-0103, 2020 WL 1492763, at *2 (E.D. Ky. Mar. 27, 2020) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018)).

**III.    Analysis**

As a preliminary matter, Defendant argues that he is not seeking a sentence reduction, but instead asks the Court to modify his sentence or to convert it to probation with home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Def. Mov. Br. at 1; D.E. No. 28 ("Def. Reply Br.") at 19 & 27). However, the plain language of the statute that Defendant cites to only gives the Court authority to "*reduce*" the Defendant's "*term of imprisonment*." 18 U.S.C. § 3582(c)(1)(A). To the extent Defendant is suggesting that the Court only modify Defendant's place of confinement, he provides no authority to rebut the Government's argument that this Court lacks authority to do so. (Gov. Opp. Br. at 25–26); *see, e.g.*, *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993) (explaining that only the BOP has the actual authority to designate the place of incarceration because the executive branch and not the judicial branch is responsible for administering sentences); *United States v. Miles*, No. 11-0581, 2020 WL 1989290, at *1 n.2 (S.D.N.Y. Apr. 27, 2020). At best, it appears the Court could reduce Defendant's term of imprisonment to time served and impose a period of home confinement as a condition of supervised release. *See* 18 U.S.C. § 3582(c)(1)(A). But regardless of how Defendant categorizes the relief sought, the parties agree that the Court must consider whether extraordinary and compelling reasons justify release and whether such release would comply with the Section 3553(a) factors and the dangerousness considerations in 18 U.S.C. § 3142(g). (Def. Mov. Br. at 26–36; Gov. Opp. Br. at 13–14). Based on these considerations, the Court denies the Motion.

    **A.    Extraordinary and Compelling Reasons for Reduction**

Congress directed the Sentencing Commission to define the "extraordinary and compelling

reasons standard." *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *5 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement which includes an application note that lists three specific circumstances that qualify as extraordinary and compelling; generally speaking, the enumerated circumstances include: (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

Here, Defendant argues that the Court is not limited by this policy statement, and that the Court has "considerable discretion" to determine whether extraordinary and compelling reasons warrant release. (Def. Reply Br. at 23–26). The Government argues that the Court is constrained by the policy statement, and, because the circumstances here do not meet the exacting criteria contemplated by the statement, the Motion fails. (Gov. Opp. Br. at 15–22).

Courts have grappled with the applicability of the policy statement, and in particular the applicability of the catchall provision, in addressing motions for compassionate release in the context of the COVID-19 pandemic. Section 1B1.13 was not updated after the First Step Act was

passed, and it therefore was drafted to address motions made by the BOP, not motions made by a defendant. *United States v. Rodriguez*, No. 03-0271, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020). Because the policy statement indicates that any "other reasons" are sufficient "*[a]s determined by the Director of the [BOP]*," U.S.S.G. § 1B1.13, Application Note 1(D) (emphasis added), courts are faced with the issue of whether a court—rather than the BOP—can evaluate what falls into the catchall provision. Some courts have concluded that it need not be the BOP that decides what falls into this catchall provision, recognizing that this section is outdated and therefore inapplicable. *See, e.g.*, *Rodriguez*, 2020 WL 1627331, at *3–4 (concluding that "the Court may independently assess whether 'extraordinary and compelling' reasons exist"). Other courts disagree with this approach, maintaining that courts must strictly adhere to the policy statement until the Sentencing Commission changes the policy. *See, e.g.*, *United States v. Mollica*, No. 14-0329, 2020 WL 1914956 (N.D. Ala. Apr. 20, 2020) ("Until Congress changes the requirement to adhere to the policy statement or the Sentencing Commission changes the policy statement itself, this court agrees with our sister courts and finds that Subsection D requires a finding of extraordinary circumstances *by the BOP* and continues to bind the court."); *United States v. Lynn*, No. 89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019). This Court need not weigh in on this issue because it finds that even if it has the authority to evaluate Defendant's arguments under the catchall provision, Defendant has not demonstrated compelling and extraordinary reasons for release.

As a preliminary matter, it is difficult to overstate the severity of the COVID-19 outbreak and the global crisis that society is facing in light of this unprecedented public health crisis. The seriousness of the outbreak is extensively detailed in the parties' submissions and is undisputed by the Government. (Gov. Opp. Br. at 6). In the wake of COVID-19, the Court considers Defendant's

motion with the utmost gravity. However, as the Third Circuit has made clear, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Thus, the Court must conduct a highly individualized inquiry of this Defendant to determine whether COVID-19 in conjunction with his alleged underlying medical conditions constitutes an extraordinary and compelling reason for release.

Although the Government does not dispute that Defendant suffers from hypertension and that he is obese based on the Centers for Disease Control's ("CDC") metrics, the parties dispute the severity of these conditions and whether they put Defendant at a higher risk of severe complications if he were to contract COVID-19. With respect to his hypertension, Defendant's high blood pressure is well-documented.[3] While the medical records reveal that USP Lewisburg is attentive to Defendant's hypertension, recent readings show that Defendant's blood pressure still fluctuates into various stages of hypertension.[4] (*See, e.g.*, D.E. No. 27 ("Medical Records") at 5 (blood pressure reading of 161/98 on April 6, 2020); *id.* at 4 (blood pressure reading of 129/88 on April 16, 2020); *id.* at 1 (blood pressure reading of 150/98 on April 28, 2020); D.E. No. 29-1 ("Updated Medical Records") at 4 (blood pressure reading of 141/89 on May 14, 2020); *id.* at 2

---

[3] Individuals with normal blood pressure have systolic blood pressure at or below 120 mm Hg and diastolic blood pressure at or below 80 mm Hg. Individuals with hypertension stage one have systolic blood pressure between 130 and 139 mm Hg and diastolic blood pressure between 80 and 89 mm Hg. Above that, the individual is in stage two hypertension. CDC, *High Blood Pressure*, https://www.cdc.gov/bloodpressure/facts.htm (last reviewed February 25, 2020) (last visited May 29, 2020).

[4] The Government argues that just because Defendant's blood pressure has fluctuated does not mean that the BOP cannot address his condition. (Gov. Opp. Br. at 20 n.5). The Government also argues that Defendant's blood pressure fluctuates because he does not consistently take his medication. (D.E. No. 29). Defendant disputes these assertions. (D.E. No. 30). The Court does not doubt the BOP's ability to treat Defendant's hypertension—indeed it appears Defendant's blood pressure is being actively monitored; however, the Court need not weigh in on these factual disputes because the relevant undisputed fact is that the medical records show that Defendant's blood pressure fluctuates into various stages of hypertension.

(blood pressure readings of 162/113 and 167/102 on May 18, 2020); *id.* at 1 (blood pressure reading of 126/81 on May 20, 2020)). As to his obesity, Defendant is 5'9" and weighs approximately 210–214 pounds. (Def. Mov. Br. at 3; Def. Reply Br. at 7). According to the CDC's Adult Body Mass Index ("BMI") Calculator, based on Defendant's height and weight, his BMI is 31 and he is classified as obese, but not severely obese. *See* CDC, *Adult BMI Calculator*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited May 29, 2020).

Neither condition alone places Defendant on the CDC's list of people who are at higher risk for severe illness from COVID-19. *See* CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last reviewed May 14, 2020) (last visited May 29, 2020). The Government mainly relies on the CDC's findings regarding hypertension and obesity to argue that Defendant is not in the high-risk category. (Gov. Opp. Br. at 5–6). Defendant points to other literature suggesting that Defendant's conditions do indeed place him at a higher risk, especially when they are combined. (Def. Mov. Br. at 7–11; Def. Reply Br. at 8–11). In particular, Defendant points to the following statement from the CDC:

> At this time, we do not think that people with high blood pressure and no other underlying health conditions are more likely than others to get severely ill from COVID-19. ***Although many people who have gotten severely ill from COVID-19 have high blood pressure, they are often older or have other medical conditions like obesity***, diabetes, and serious heart conditions that place them at higher risk of severe illness from COVID-19.

CDC, *COVID-19 and Hypertension*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#COVID-19-and-Hypertension (last reviewed May 24, 2020) (last visited May 29, 2020) (emphases added). Defendant also argues that the drug treatments he receives for his

8

hypertension "may make him more likely to contract COVID-19 in the first instance." (Def. Mov. Br. at 10). The competing arguments and sources presented by the parties demonstrate that the relationship between hypertension, obesity, and elevated risk from COVID-19 is not fully understood.

A review of applicable COVID-19 case law similarly reveals varying information about defendants who suffer from hypertension and/or obesity. *Compare United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying motion for compassionate release where defendant suffered from high blood pressure and obesity), *and United States v. Kupa*, No. 11-0345, 2020 WL 2404856, at *2 (E.D.N.Y. May 12, 2020) (same), *with United States v. Anderson*, No. 15-30015, 2020 WL 2521513, at *1 (C.D. Ill. May 18, 2020) (releasing defendant with hypertension), *and United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *3 (E.D. Pa. May 4, 2020) (identifying hypertension as a serious health condition and one of "the two leading comorbidities associated with increased risk from COVID-19"). Importantly, however, these decisions are not inconsistent with one another because in each decision, the court looked beyond the medical conditions to determine whether release was appropriate. Thus, the Court now turns to the conditions at the facility where Defendant is housed.

Defendant is housed in the minimum-security satellite camp at USP Lewisburg. (Def. Mov. Br. at 4–5). As Defendant points out, there are certain realities about the facility that prevent the implementation of recommended social distancing practices, including a number of shared spaces. (Def. Mov. Br. at 13). However, the Government submitted the declaration of Jonathan Kerr—the supervising attorney for USP Lewisburg and the satellite camp—which describes the COVID-19 policies and procedures that are in place and the current status of the outbreak at the facility. (D.E. No. 26-2 ("Kerr Decl.")). The procedures put in place appear to be working. In

particular, according to the Kerr Declaration (i) all staff and inmates have been issued an appropriate face covering (*id.* ¶ 23); (ii) symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation (*id.* ¶ 24); (iii) all staff are screened for symptoms (*id.*); (iv) social and legal visits are halted and contractor access is restricted to only those performing essential services (*id.* ¶¶ 25–26); and, most importantly, (v) "***currently there are no COVID-19 cases at the USP Lewisburg main institution or adjacent satellite camp***" (*id.* ¶ 30 (emphases added)).[5]

Defendant argues that the lack of positive COVID-19 cases at USP Lewisburg paints a false picture of the facility because no inmates have been tested for COVID-19. (Def. Reply Br. at 2 (citing Kerr Decl. ¶ 31)). The Court is mindful that asymptomatic transmission can occur undetected; however, the Court is not persuaded by Defendant's argument, which is only speculative at this time. As such, the Court is "not currently prepared to find that Defendant's health, in combination with the conditions at USP Lewisburg, constitutes an extraordinary and compelling reason for Defendant's release." *See United States v. Schlifstein,* No. 18-0217, 2020 WL 2575633, at *3 (S.D.N.Y. May 21, 2020); *see also Kupa*, 2020 WL 2404856, at *2 ("The[] statistics [at FCI Lewisburg] alone provide a compelling reason to deny the defendant's motion.").

The cases cited by Defendant do not persuade the Court otherwise. Defendant analogizes the present case to other seemingly similar cases—*i.e.* ones in which the defendant suffers from similar medical conditions or is housed at the same facility. (*See* Def. Mov. Br. at 29–31; Def. Reply Br. at 21–22). However, as already stated, the question of whether an inmate has demonstrated extraordinary and compelling reasons for release necessitates a highly individualized

---

[5]  The BOP website lists one "staff recovered" case at the facility, but "that USP Lewisburg employee was on a temporary duty assignment ("TDY") to a New York facility and quarantined off-site upon return. The staff member has not been to USP Lewisburg since April 12, 2020, when they left TDY." (Kerr Decl. ¶ 30).

inquiry. Given the individualized assessment each court must make, the cases heavily relied upon by Defendant are easily distinguishable from the present case. *See, e.g.*, *United States v. Salvagno*, No. 02-0051 at 11 (N.D.N.Y. Apr. 23, 2020) (relying in part on "the significant outbreak at FCI Danbury"); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (considering whether to release a defendant who had pled guilty but was not yet sentenced and relying in part on defendant's severe obesity); *United States v. Delgado*, No. 18-0017, 2020 WL 2464685, at *6, 11 (D. Conn. Apr. 30, 2020) (relying on defendant's severe obesity and the COVID-19 outbreak at the Danbury facility ); *United States v. Gross*, No. 15-0769, 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (deferring ruling on defendant's motion but noting that defendant's severe obesity placed him on the CDC's list of people at risk for severe illness from COVID-19); *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *4 (E.D. Pa. May 4, 2020) (considering the Government's concession that defendant's medical conditions qualified as one of the enumerated extraordinary and compelling reasons for a reduction and relying on defendant's hypertension, diabetes, and age as risk factors).

Accordingly, based on the Defendant's underlying medical issues and the current conditions at USP Lewisburg, the Court finds that Defendant has not shown that extraordinary or compelling reasons warrant release.

### B. Section 3553(a) Factors

Without extraordinary and compelling reasons for release, the Court's inquiry could end here. Nevertheless, the Court's conclusion is also supported by an analysis of the Section 3553(a) factors.[6] The applicable Section 3553(a) factors include:

---

[6] Before granting a motion for compassionate release, the Court must also evaluate dangerousness pursuant to 18 U.S.C. § 3142(g). However, because the Court denies the Motion based on no showing of extraordinary and compelling reasons and an analysis of the 3553(a) factors, it need not address dangerousness.

11

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a); *United States v. Brown*, No. 07-0019, 2020 WL 2466081, at *4 (D.N.J. May 13, 2020). And "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a).

Judge Vazquez evaluated each of these factors at Defendant's sentencing. As to the nature and circumstances of the offense, Judge Vazquez determined that the offense was serious. (Sentencing Tr. at 21:1–2). Indeed, Defendant committed healthcare fraud concerning compounded medication whereby certain insurance companies would pay an extremely high amount of reimbursement for these medications; Defendant was responsible for a "very sizeable loss, over [$]3.5 million of which he personally earned over [$]1.1 million." (*Id.* at 21:2–9). Judge Vazquez also considered the Defendant's "very active role" in the scheme. (*Id.* at 22:1–10). With respect to Defendant's history, characteristics, and life outside the offense, Judge Vazquez considered many aspects of Defendant and the Defendant's life, including his relationships with his family and friends and his active and seemingly positive role in his community. (*Id.* at 22:1–24:14). In addition, Judge Vazquez found general deterrence was "absolutely necessary" here, whereas specific deterrence was not as clear, considering Defendant's otherwise law-abiding life.

(*Id.* at 24:15–17). Ultimately, the "actual actions that [Defendant] has taken in his life" led Judge Vazquez to grant a downward variance and impose a term of imprisonment of 50 months, below the 63 to 78 months guideline range. (*Id.* at 25:25–26:7).

To date, Defendant has only served approximately 12 months (or 24%) of that sentence.[7] The Court acknowledges, as Judge Vazquez did, that certain of the 3553(a) factors mitigated in favor of a lesser sentence for this Defendant. However, those factors already resulted in a downward variance for this Defendant. To reduce Defendant's sentence even lower would undermine some of the other factors that Judge Vazquez considered and that still hold true today—namely the seriousness of the offense, the sizeable loss, Defendant's very active role in the scheme, and the need for general deterrence. (Sentencing Tr. at 21:1–24:17); *see United States v. Hammond*, No. 18-0184, 2020 WL 2126783, at *3 (W.D. Pa. May 5, 2020) (explaining that the COVID-19 pandemic did not justify a further reduction of defendant's sentence); *United States v. Mortensen*, No. 11-0095, 2020 WL 2549970, at *2 (D. Nev. May 19, 2020) (denying motion for release because, although defendant's law abiding lifestyle led to a downward variance at sentencing, "the seriousness of his conviction and the events surrounding it" now outweighed those considerations); *Brown*, 2020 WL 2466081, at *4 (denying motion for compassionate release where cutting defendant's term of imprisonment in half "would certainly fail to reflect the seriousness of his violations"). Accordingly, an analysis of the 3553(a) factors also warrants denying Defendant's Motion. *Alexander*, 2020 WL 2507778, at *5 (concluding that "granting

---

[7] Defendant makes much of the fact that he has the potential to be transferred from USP Lewisburg in December 2020, only 7 months from now. (Def. Mov. Br. at 22; Def. Reply Br. at 17). The parties agree that "with good time conduct and completion of the RDAP program, [Defendant's] release date from BOP custody is December 6, 2021." (Def. Reply Br. at 17). Defendant bases the December 2020 transfer date on the BOP's authority to transfer Defendant to a halfway house within 12 months of his release date. (*Id.*). These dates are speculative at this time. In any event, the Court's focus is on whether the sentence imposed—here 50 months—is sufficient to comply with the considerations outlined in Section 3553(a).

defendant's motion for compassionate release would be wholly inappropriate under the Section 3553(a) factors").

## IV. Conclusion

For the foregoing reasons, Defendant's motion is DENIED. An appropriate Order accompanies this Opinion.

s/ *Esther Salas*  
**Esther Salas, U.S.D.J.**